We'll call the first case Linda Valerino v. Conrad Hoover, David Drake et al., Ms. Valerino, but we want to mention that Judge Roth and I are joined in this case by Judge Schwartz who is participating by audio, I almost said video, but by audio from Newark. Judge Schwartz, good morning. Good morning, thank you for accommodating me to participate this way. Both sides should know that Judge Schwartz is fully invested in this case and although she is not here in person, is fully participating and she will have the opportunity not only to hear both sides, but to participate with questions, although there is a slight delay, so if you hear me pause and waiting for a question from her, but with that we'll call. Let me just say that I'm really sorry that Judge Schwartz can't join in the 82 degree temperature with us here today. No one's sorrier than me. It's actually too warm. But with that, as we said, we called the first case and we'll recognize Ms. Valerino. Good morning. Good morning, your honors. Linda Valerino, may I please the court? I would like to reserve four minutes for rebuttal. That request will be granted. Ms. Valerino, if you would keep your voice up as much as possible and that microphone as I sort of have to speak into it, but not too much into it.    Thank you, Mr. Chief Justice. Yes, your honor. Mr. Simpson and Mr. Manning both breached their contracts with me. I want to remind the court that Simpson and Manning, they had a secret meeting at Simpson's office on January 19th, 2015. After Valerino had settled her case, Mr. Simpson did not contact Valerino. Excuse me, I'm referring to myself in the third person. Is that all right? That's fine. Mr. Simpson did not contact Valerino to ask when he's going to receive his money. He instead had a meeting with a former counsel, Johanna Manning. Attorneys are not supposed to take measures to harm their clients, to personally enrich themselves. Simpson breached his written agreement. He had a written agreement in the email form. He wrote that to me in 2012 and 2013. He also said that any additional value that I'd like to give him could be zero or a million dollars and that it was my decision how much additional funds he would receive to settle his fee dispute. This was a conciliatory agreement and Mr. Simpson failed to provide Judge Bartle with the agreement. Instead, Mr. Simpson provided the court with the retainer agreement, which I'm actually very glad that he did because in that retainer agreement was the arbitration clause. If any fee disputes should arise, it should be resolved through conciliatory measures. If not, we would go to arbitration. Ms. Valerino, that's really the issue that's before the court, is it not? That's the first issue, yes. The main issue where you shouldn't have to address anything else should you reverse and send it back to the lower court to complete the arbitration. Okay. You know, Ms. Simpson, I'm a former district judge. And as a district judge, it was not my function to order the arbitration. The arbitration agreement, it's up to one of the parties. Having agreed that you will arbitrate, it's still up to one of the parties to say, I want to go to arbitration. And the significance of the agreement to the district judge is at the request of the parties for arbitration, whether that will be granted or not. But in my experience as a district judge, it has never been the function of the district judge, himself or herself, to order the arbitration. Well, Your Honor, that may very well be the case. I defer to you regarding the law. But the lower court had made his decision to award Mr. Simpson $75,000 based on VI contract law. And the lower court, in its opinion, referred to that retainer agreement. He referred to the retainer agreement on how to pay Mr. Simpson and how much, but ignored the arbitration paragraph of the agreement. So my position is that if the VI contract law is the ruling law, then the whole contract should be honored. Ms. Valerino, I think the problem in this case, at least as I see it, on what you're raising here, is that after you settled with the government and the stipulation for settlement was filed, both of your former counsels filed motions for attorney's fees. And as to at least the part involving Mr. Simpson, the district court decided the motion and you had not responded to that motion. So how is the district court to even know that there was a dispute? Because, see, that agreement that you signed that Mr. Simpson prepared said that it goes to arbitration if there's a dispute. So how does the district court even know there was a dispute? Your Honor, if you take additional notice of the record, in the notice of appearance by Andy Simpson's firm, I think it may have been February 25, 2015, he noticed his appearance to address the attorney fee dispute. So the court was put on notice that there was an attorney fee dispute from his notice of appearance that was filed in advance of his motion. Nevertheless, the same day, but it was filed in advance. Okay. All right. But at that point, did the court have the agreement because it was attached to the motion? No, Your Honor. What the court had was filed, docketed, was the motion, the one-page document that said Andy Simpson wants $75,000. As I remember it, the agreement itself was not attached to that motion. A supporting memorandum should have been attached to that motion. And that was attached to the motion to consider it under seal. Yes, it was not attached to the motion. Okay. But the bottom line still is, you'll agree that the district court made their decision on attorney's fees before it knew, at least from you, that you were disputing that Mr. Simpson was entitled to one-quarter of the amount less than $50,000 he had already been paid. I'm sorry, Your Honor. Could you repeat the question? The district court made its decision on the initial motion for fees before you filed anything specifically telling the district court that you opposed the attorney's fee motion. Yes. However, the district court's reasons for the decision was made based on the supporting brief that was not filed with the motion. It was given to the court through the back door, through e-mail form. Did you get a copy? I'm sorry? Did you get a copy? I don't know if I received the exact copy that the court received. I received an e-mail scrolled copy that was difficult for me to open. At some point I was able to open it, but I couldn't separate out the exhibits from the main document. Did you ask for a better copy? No, Your Honor, because Mr. Simpson said in his e-mail that this was only being provided for purposes of the motion to seal and that I would not get a copy of it until the judge ruled on the motion to seal. And he further stated that he would not send me a better copy. Excuse me. Judge Schwartz has a question. What he actually represented was, pursuant to the District of the Virgin Islands electronic filing rules, he would file it to serve you an electronic need. I don't know that we can do a refusal to produce it in a different way. Judge Schwartz, we're having trouble hearing you on that last question. Thank you for letting me know. What I was saying was my understanding from reviewing the record was that Mr. Simpson simply represented he was providing you a copy of the brief electronically consistent with the District of the Virgin Islands rules for electronic filers. I don't think we can construe from that a refusal to provide it if you had actually had a problem. Moreover, I read your opposition to the motion to seal, and that indicates to me that you seem to have been able to review its content because you make reference to it. So is it your position that you are unable to discern his reasons for his application? My position... I'm sorry. That's okay. If I get close to the microphone... You're at the right spot right now. My position is that while Mr. Simpson had written in his email that I could receive an email copy from him according to the Notice of Electronic Filing rules, that was not accurate. What I had consented to was to receive electronic notices through the clerk of the court and not from former counsel. And what I'm... I'm just saying that even Mr. Simpson did not say, I am providing this to you for the purpose of my motion. He said, I am providing this to you for purpose of the motion to seal. Okay. I don't know if I answered your question, Judge Gordon. Did any of the parties, either you or Mr. Simpson or Mr. Manning, at any time ever request arbitration? No, not other than in our agreement. That was... Yeah, but there was no specific request. Having agreed that it was possible to do so, no one actually requested arbitration. Is that correct? That's correct, Your Honor. Instead of Mr. Simpson contacting Valerino once he found out there was a $350,000 settlement, he did not contact me, the one he had the agreement with, that he contacted former counsel. What occurred at that meeting, I don't know. Mr. Simpson had, prior to that January 19, 2015 meeting, Mr. Simpson conciliatorily agreed to a $22,625 amount to settle his fees. And he never provided that document to the court. If we're going to go by contract law, the retainer agreement clearly states if we cannot resolve any fee dispute through conciliatory measures, which Mr. Simpson went back on his word, then there should have been arbitration. Now, you did ask for any reply to the motion for reconsideration. You asked for arbitration, did you not? Yes, Your Honor. And then my contention is that I know Mr. Simpson says, oh, too much time may have passed, and that it was in a reply, but I also asked for it in my motion for leave to file out of time. So I requested... What motion and in what court? In the district court. Okay. And when was this motion for leave to file out of time presented? If I can just check, Your Honor, it may have been April possibly. It was shortly thereafter. Shortly thereafter. I wanted to put on the record or give the court an opportunity to hear me. I'm going to give you a little more time on this, but I want to ask you a couple other questions. If we can. As to the dispute with Mr. Manning, the district court, when it analyzed what Mr. Manning was entitled to, already discounted the number of hours that he had billed you before arriving at the appropriate award. Did it not? Yes, it did. Okay. So what is your complaint with Mr. Manning? I'm not sure I fully understand it. Mr. Manning made an oral and written contract through email form to agree to take $65,000 if I had settled my case at $350,000. And that was in December? That was in November. Okay. November 19th. I have it on record in email. November 21st on record in email. There were conversations about it, of course. And Mr. Manning started to back off his agreement. And I just want to point out to the court that you should really evaluate the sequence of events, that Mr. Manning was not offering me a discount to his fees. Mr. Manning made an agreement to $65,000 if I settled the case at $350,000. At that point in time, Mr. Manning never provided an amount of money for a bill or an invoice, not for his 2011 representation, not for his 2014 representation. So the bottom line is you say that you should only pay Mr. Manning $65,000? Yes, because I think when the court... Let me jump a step beyond that. If we do not agree with you on that point, how can you then disagree with what the court found based on the fact that the court discounted Mr. Manning's bill by a certain number of hours? Well, there was some law that was cited as to the ability of the attorney. And while I did agree, should we go to trial and win, that he could bill the government at $100 an hour for his first representation and $225 per second, the law that was cited shows that his ability did not... His hourly billed rate for being a criminal indigent attorney was less. He told the court he had 250 civil cases, experience at 250 civil cases. He never even provided one affidavit of receiving fees at those rates that I paid. And I think it's on record, too, that he agrees to pay Scott McShane, who he does legal research for, at $150 an hour. So just to answer your question, how I would disagree with the lower court is that his fees should have been reduced based on his inexperience. Okay. All right. So I just want to... I understand your point, but I just wanted to clarify that for the argument. Judge Schwartz, at this stage of the argument, do you have any additional questions of Ms. Valerino? Thank you, Judge. Ms. Valerino, I have two questions that go to this issue about the arbitration. You, I think, indicated to the judges that it was in your reply brief and perhaps in a separate... Judge Schwartz, can you keep your voice up, please? I'm having trouble hearing you. Ms. Valerino, you indicated in response to some questions that you raised the issue of arbitration in filings after the district court rules. My question for you first is, you knew in January that there was a meeting. You said it on the record today, and you said it in your motion in opposition to Steele about fees that occurred between Mr. Manning and Mr. Simpson. If you wanted to ensure that arbitration occurred, why didn't you seek to request that that issue be taken from the court and be put in arbitration as soon as you knew that there was going to be a dispute about fees? Well, Your Honor, I had planned on addressing it in the opposition to his motion and supporting memorandum. However, it was stricken from the record, which brings us to the point. It was stricken from the record by someone other than Andy Simpson, who moved for it, someone from his office did, who had not noticed the appearance on the record. So I did, but it was stricken from the record. And I'm not a lawyer. I have had a contract with Mr. Simpson, and I thought the contract, four corners of it, would be followed. And I didn't know that. Obviously it sounds as if, okay, I just didn't like Mr. Simpson takes the position. I didn't like the ruling, so therefore then I filed opposition. That's not the case. It was clear from my opposition to the motion to Steele that I intended on filing an opposition. But Mr. Simpson, he had ex parte communications with the court. He received apparently permission to file it through the court through an e-mail, but I had not received the reasons for the motion. So it's very difficult to – I had not received the electronically filed reasons for the motion. So I did not know that my clock was ticking on a deadline. We know, though, from the record that an e-mail copy of the brief was filed, and we know from your opposition to the motion to Steele that you were aware of its contents. But let me bring it to my next question. In your opposition to the motion to Steele, one of your reasons for opposing it is you wanted to put in the public domain your contentions concerning Mr. Simpson's representation. Yes, Your Honor. I reconcile that with the fact that an arbitration would not have occurred in such a public way. And I ask that question because it seems to be inconsistent with someone who wants to arbitrate because you want a public hearing on your issue. So, I'm sorry, I'm confused with the question. Arbitration is confidential. Yes. And, therefore, if your concern was that the public know what your dispute was about, they would not learn that in arbitration because arbitration is confidential. Right. They would learn that, the public would learn that in my opposition because Mr. Simpson But your opposition in the arbitration, the public would know about. Right. But in my response opposition, the public would. Okay. Thank you very much. Okay, Ms. Valerino, we'll have you back on rebuttal. Thank you, Your Honor. Thank you very much. Mr. Simpson. Good morning, Your Honors. May it please the Court, Andrew Simpson on behalf of my law firm. I think Judge Schwartz, the last question you asked and the answer addresses this issue perfectly. Ms. Valerino wanted to have it both ways. She wanted to have a public record and she just acknowledged she wanted to make that through the opposition to the motion. And when she filed the opposition to the motion to seal, she also incorporated opposition to the brewing fee dispute and very clearly states she wants this to be a public record. And it's my contention that she waived arbitration right then and there. Okay, that's your contention. Let me ask you this. There's no question here that you prepared this fee contract, correct? I certainly did. It was essentially negotiated over a year with Ms. Valerino. But you prepared it. It was you or your firm that prepared the contract? Certainly the initial draft. Okay. And, well, the draft that's part of the record. And it's highly likely that you're the one that wanted the arbitration provision included in that agreement. I've never heard of a client yet who said, let's put an arbitration clause in. I fully acknowledge that the arbitration clause was in their PDA. Okay. And so you're arguing that in a relatively short period of time, Ms. Valerino's conduct constituted waiver of her right to seek arbitration under that agreement. I think that depends upon your definition of relative, but yes. Okay. It begins with the agreement by Ms. Valerino to submit the dispute to the court, which I believe was in December. I'm not even aware of that. Yeah. Okay. So I guess the problem I have with this case is that you did not file with your memorandum. You did not file with your motion for attorney's fees a memorandum. I could not. Because you wanted to have the matter resolved under seal. Correct. Okay. And the question becomes, it seems to me, when does the clock start running for Ms. Valerino to file a response? There may be only 14 days, but when does the clock start running? And it seems to me that there's a reasonable question here that maybe that clock can start running until the court decided that the matter was not going to be heard under seal and that she had 14 days. So you're really asking us, I guess my question is, you're really asking us to say that waiver applies here in dealing with a relatively short period of time. Nobody requested arbitration here, right? Nobody requested arbitration until after the judgment. Yeah. And that would not be by going to the court. That would be by going to an arbitration board and saying, I want arbitration. And then if the other side objected, you would go to the court and say, well, look, we've got arbitration in the agreement. That's perfectly appropriate to go there. That's the moral of it. I think if she had promptly filed something saying, I want arbitration, the court would interpret that. Okay. And the point I'm driving to is what she did file was this reply which said there's an arbitration clause and this matter should go to arbitration. Your Honor, what she filed first was the opposition. Opposition. She filed that. At which point she clearly knew that she had signed the arbitration agreement. She had the opposition to the motion. I mean, she had the memorandum in support of the motion for attorney's fees, and she makes reference to it in her opposition and argues against that memo as well. And she doesn't seek arbitration there. And she tells the court and the party, I want this in a public record. I want this dispute resolved by the court, which is entirely consistent with what was filed originally with the settlement agreement, and I'm submitting this to the court for arbitration. I could have requested arbitration. I didn't. She didn't. But she did. She did within 14 days of the time that I think Judge Bortle made the decision here in this case. Yes, she did request it after she got the public ruling that she was seeking. Okay. And it was not satisfied with it. And I remind the court that after the deadline ran to respond to the motion, I filed a notice with the court to inform it, and Ms. Valerino received ECF notice of that saying there has been no opposition, this motion may be decided. And Ms. Valerino did not respond to that motion either. And one would expect it, receiving notice that your opposing party contends that you are out of time to respond to that motion, that there would be a prompt response to that saying I misunderstand something here, please give me more time. What is the local rule on responding opposition to a motion? I have to think because of the change in time, but I believe it's 14 days. Okay. And was Ms. Valerino aware of these local rules? Was she aware that there was a timeliness requirement if she was opposed to something to informing the court of that? I can't say. I have personal knowledge that she knew of that rule, but as a condition of becoming an electronic filer, she's certified that she knew the rules. And if you look at the history of that case where she represented herself pro se, she has a very technical knowledge and relies upon technicalities in the local rules. So I would say she knew the local rules. Okay. Mr. Simpson, do you have anything else to bring before the court? Judge Schwartz, do you have any questions of Mr. Simpson? Just one that we haven't touched on. Ms. Valerino made mention of an e-mail with a $22,000 amount. We can't hear you. Ms. Valerino made reference to the e-mail with the $22,000 amount. Do you have any response to whether that constituted an agreement? Yes, Your Honor. The offer was never accepted. There was never a communication back to me. That was made at a time where Ms. Valerino had represented to me that she was going to settle the case for a low six-figure settlement, and I was trying to make it possible for her to settle. I never even learned what had happened with that settlement discussion. I heard nothing more from her and did not even learn about the submission of this dispute to the court until Attorney Manning alerted me to it. Thank you. Okay. Anything else, Judge Schwartz? No, thank you. Okay. Thank you. We'll have Mr. Manning. Good morning. May it please the Court, Your Honor, and on behalf of myself. This case involved a $27,000-and-a-half loss. I negotiated a $350,000 settlement, and eight days after I withdrew the plaintiff's case, I settled the case for $350,000. Now, in the process of building up to this settlement, I offered to the plaintiff to reduce my terms. There was a lot of back and forth between me and the plaintiff until December of the fifth. You sent her an email in late November to that effect, right? It was actually December of the fifth. Well, no, you sent an email offering to settle in November. That's correct. Okay. I sent an email to induce settlement in this case, offering to reduce my fees to $65,000. Now, on December the fifth, I received an email from the appellant, and she says, if I choose to settle this case for $325,000, I will unilaterally reduce your offer for $40,000. So what that shows us is that there was no manifestation of intent to settle this case, I mean to accept the $65,000 fee. Ten minutes later, I sent her a time certain to accept the $350,000. We had two offers. I'm sorry. We had a Rule 68 offer at $325,000, no addition. And we had a second offer of $350,000 with the condition that she not reapply to work at the U.S. Martin Center. We will continue to negotiate that case. We remain independent. But I sent her an email on the fifth of December. Ten minutes after, she made it clear that she had no intention of settling this case and reducing my fees. And I gave her a notice that if you don't accept my offer to reduce my fees by 5 o'clock on December 5th that day, then my offer to reduce my fees expires. She did not respond to that email. Five days later, after I, at the time that I filed my notice of motion to withdraw, I provided a notice to the defendant. I provided them with the full amount of my attorney's fees and also put it on record the full amount of my claim fees. Eight days after I withdrew in this case with the court breaking my motion to withdraw, she sent me an email stating that I have orally agreed to the settlement agreement. Are you still willing to accept your reduced $65,000 fee offer? At which time, I flatly told her no, and this litigation was sued. So Judge Bottle did not commit a clear error in this case by finding that there was no agreement to reduce these fees at $65,000. There was no objective matter statement of intent to accept the offer. She could have made comments to the statement that she was willing to accept. There was no consideration at the time. Does the record adequately reflect that your billing rate of $250 an hour for a substantial portion of the time was supported by the evidence you submitted to Judge Bottle? It was actually $225. $225, I'm sorry. There's actually two. There's a representation from 2011 where I agreed to do it for $100. And there's also the $225 an hour from secondary litigation, and I believe that she does, because this is a case that the plaintiff was willing to settle pro se herself, and she made these representations to attorney Sessions tonight. I think the record reflects that she was willing to settle it against pro se in a high defined way, and that was less than $100,000. And after we crossed that with Judge Bottle, the negotiations continued, and it got to $200,000, with vortical damages of $27,000, I believe. It accurately reflects that. And I don't believe that the plaintiff or the attorney put forth any evidence in this case that Judge Bottle abused his discretion. Even if we were to disagree with Judge Bottle's opinion, it still doesn't rise to the level of abuse of discretion. Okay. Judge Schwartz, do you have any questions of Mr. Manning? No, thank you. Okay. All right, Mr. Manning, if that's all, we'll thank you. Ms. Valerino on Roboto? Yes, Your Honor. I'll respond briefly to Mr. Manning, and then I'll address Mr. Simpson. Mr. Manning first says eight days after he withdrew that the case settled. I just want to correct the record. He was terminated for cause on December 8th, and the case settled on December 24th. He's referring to the eight days since it took one week for Judge Bottle to remove him off of the case. I just want to clarify the record. Mr. Manning says that his reasons for attempting to change the agreement in place of $65,000 was because I wrote an email stating that he would get only $40,000. But he doesn't go on to explain, and it is on the record, so if the Court could just review document 218, Exhibit 8B, the 12.03 a.m. email from Manning to Valerino. Mr. Manning put it on the record, I believe, that Mr. Manning wrote an email to me stating that he signed the $325,000 Rule 68 on his own volition. He signed it. In fact, he said he signed both of them, and he wasn't going to be available the next day. Valerino and myself had to go make a decision and settle the case without my attorney, and I needed to know from him if $40,000 was enough for him because he signed the $325,000 settlement demand, and that exhibit I referred to will show that. So it wasn't that Linda just came out of the blue trying to reduce her agreement. I had to make a decision without my lawyer, the same lawyer, who refused to counter demand the night before. And then when he did permit, when he did counter demand, he did it a day after. He did it a day late. So now I was now bound to the Rule 68 offer of judgment if I didn't receive that at trial. So I just wanted to clarify that. I just didn't out of the blue say, hey, I'm going to go pro se and reduce your fee. It wasn't like that. And when you review the exhibit, you'll see. And then I wanted to say I had not seen the full amount of his fees claimed until February 6, 2015, with his motion, Ex parte motion for fees. That was the first time I saw the 2011. And I just saw it through November 23, 2014 fees. I did not see what he had listed. In fact, the same exhibit, Document 218-8C, is where he lists for the court his fees. And it's labeled, if you notice, November 23, 2014. That's the first time I've ever even seen any of his fees. And in 2013 is when I reached $100,000, which is a six-figure amount, with the government that the case did not settle. And there was consideration that Mr. Manning said he would take $65,000. I had to consider what Mr. Manning would take. I had to consider the $22,625 what Mr. Simpson would take before I settled my fees to include my $107,000 in expenses. So there was consideration. And back to the rate, Mr. Manning required the client to do most of the work, and I had to do it or else it wouldn't have been done. And there's about 386 pages of exhibits that I provided for the district court to review the opposition. And I see I'm out of time, but if I could request maybe another minute to respond briefly to Mr. Simpson. We'll grant that. I just want to show Mr. Simpson's dishonesty before this court. He stood up here and he said that the only reason why he offered the $22,625 amount was because Linda Valerino was settling her case in 2013 for $100,000. When, in fact, if you go back and check the email on record, Mr. Simpson wrote, and here is what I sent you in 2012. That is before Linda Valerino had her $100,000 offer to sell the case from the government. So Mr. Simpson offered the $22,625 in 2012 and 2013. And a typical client wouldn't know that the contract had an arbitration agreement with something that you have to request from the judge. Arbitration, it doesn't just include secrecy. So the fact that there's public record is not the main reason for arbitration. There would be a hearing. Mr. Simpson would have to be cross-examined. And I think the reasons for his termination may have played in, and I see him all the time again. Okay. All right, Ms. Valerino. We thank you. We understand your position. And we thank both sides for their briefs and for their arguments. And unless Judge Schwartz has any additional questions. Judge Schwartz, do you have any additional questions? No. Thank you very much for everyone's argument and briefing. Okay. With absent any additional questions, we will take this matter under advisement. Your Honor, may I make one more comment? One more what? May I make one more comment? One more comment. Yes, Your Honor. I did not know there was a fee dispute with Attorney Simpson in advance of January 19, 2015. In advance of? January 19, 2015. Okay, but you did know there was a dispute at the time he filed his motion for attorney's fees? I knew there was a dispute at the time he filed his notice of appearance. For what? He filed his notice of appearance before January 19, 2015. You knew there was a dispute at that point? Yes. Okay. And so you acknowledge that. And I thank you. Thank you, Your Honor. Okay. With that, we'll take the matter under advisement. And the panel will take a short recess. And then we'll return for the balance of the cases.